[Cite as *TCE Tall Oaks, L.L.C. v. Fifth Third Bank, Natl. Assn.*, 2025-Ohio-4724.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| TCE TALL OAKS, L.L.C., | CASE NO. 2025-L-003 |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the<br>Court of Common Pleas |
| FIFTH THIRD BANK,<br>NATIONAL ASSOCIATION, | Trial Court No. 2023 CV 000802 |
| Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: October 14, 2025
Judgment: Affirmed

*Brianna M. Prislipsky*, *Brian P. Nally*, *Russell J. Meraglio, Jr.*, and *Kaitlyn M. Posta*, Reminger Co., L.P.A., 200 Public Square, Suite 1200, Cleveland, OH 44114 (For Plaintiff-Appellee).

*Patrick T. Lewis*, *James A. Slater, Jr.*, *Sean E. McIntyre*, *Peter M. Kahnert*, and *Kevin T. Lissemore*, Baker & Hostetler, L.L.P., Key Tower, 127 Public Square, Suite 2000, Cleveland, OH 44114 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Fifth Third Bank, National Association ("Fifth Third"), appeals from the Lake County Court of Common Pleas' entries ordering an in camera review of 243 purportedly privileged documents and ordering Fifth Third to disclose 203 of those documents to plaintiff-appellee, TCE Tall Oaks, L.L.C. ("Tall Oaks"). We affirm.

{¶2} Tall Oaks filed a complaint against Fifth Third on June 23, 2023, alleging that Fifth Third allowed nearly one million dollars to be stolen from Tall Oaks's bank accounts between September 28 and September 30, 2022, through unauthorized and

fraudulent transactions. Fifth Third filed an answer and counterclaim, alleging breach of contract or indemnification.

{¶3} For several months, the parties engaged in a series of contentious discovery requests, objections, responses, and requests to stay. Multiple witnesses were deposed. Fifth Third produced hundreds of documents on four occasions between December 2023 and June 2024. On August 22, 2024, Fifth Third provided a privilege log of 243 documents it asserted were not discoverable under the attorney-client privilege, the work-product doctrine, or both.

{¶4} On September 6, 2024, Tall Oaks filed a "Motion to Compel Discovery, or in the Alternative, Motion for In-Camera Inspection," in which it claimed Fifth Third was improperly attempting to shield internal emails exchanged between various non-lawyer employees of Fifth Third that appear to discuss Tall Oaks's account, what happened to Tall Oaks's account, and summaries of pertinent account activity completed by Fifth Third employees (e.g., from within the Wire, Fraud, and Financial Crimes Departments).

{¶5} Fifth Third opposed the motion, claiming the documents on its privilege log principally reflect communications, notes, and related documents dated on or after December 5, 2022, when it first received a threat of litigation from Tall Oaks. According to Fifth Third, these communications were exchanged either (1) between attorneys in Fifth Third's Legal Department and other Fifth Third employees related to advice of counsel or legal services, or (2) between Fifth Third employees, acting under the direction of counsel, to collect information and analysis to provide the Legal Department attorneys.

{¶6} On December 11, 2024, the trial court ordered Fifth Third to produce under seal the 243 withheld documents for the court to conduct an in camera review.

{¶7}   On January 7, 2025, the trial court issued an "Entry Ordering Production of Records After In-Camera Review."  The court held as follows:

Having reviewed all [243] records in the privilege log, the Court determines that the following [40] records (identified by their control number) are protected by attorney-client privilege or the work-product doctrine as indicated in the privilege log and shall not be produced.

[List of 40 control numbers]

All [203] records not listed above shall be produced by January 15, 2025.

Plaintiff's request for costs and attorney fees is denied.  The flash drive containing all records and the privilege log shall be retained as the Court's exhibit.

{¶8}   Fifth Third noticed an appeal from this order, and the trial court granted Fifth Third's motion to stay the order without bond pending the outcome of this appeal.

{¶9}   Fifth Third asserts three assignments of error for this court's review:

[1.] The trial court committed prejudicial error in entering its January 7, 2025 order compelling [Fifth Third] to produce documents protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

[2.] The trial court committed prejudicial error in entering its January 7, 2025 order compelling [Fifth Third] to produce documents protected from disclosure by the attorney work-product doctrine without a showing of good cause pursuant to Civil Rule 26(B)(4) from [Tall Oaks].

[3.] The trial court committed prejudicial error in entering its December 11, 2024 order compelling [Fifth Third] to produce its putatively privileged documents for *in camera* review where [Tall Oaks] failed to make an adequate factual showing that *in camera* review is necessary to establish the validity of Fifth Third's privilege assertions.

{¶10}   Fifth Third's first two assignments of error pertain to the trial court's entry ordering the disclosure of the controverted documents, while its third assignment of error relates to the trial court's entry ordering an in camera review of those documents.  We begin with the third assignment of error.

Case No. 2025-L-003

{¶11} Initially, Tall Oaks asserts that the third assignment of error is not properly before us because the entry ordering Fifth Third to produce documents under seal for in camera review is not a final appealable order under R.C. 2505.02. Appellate courts are limited to reviewing only "final orders" of inferior courts. *See* Ohio Const., art. IV, § 3(B)(2); *State v. Glenn*, 2021-Ohio-3369, ¶ 10.

{¶12} We would agree with Tall Oaks's position had Fifth Third immediately noticed an appeal from the entry ordering the in camera review. "An in camera inspection is not an order that requires the disclosure of materials to another party. Therefore, orders for an in camera inspection do not constitute final orders." *Blue Technologies Smart Solutions, LLC v. Ohio Collaborative Learning Solutions, Inc.*, 2022-Ohio-1935, ¶ 15 (8th Dist.), citing *Daher v. Cuyahoga Community College Dist.*, 2018-Ohio-4462, ¶ 16. Here, however, the trial court has ordered the disclosure of documents claimed to be privileged, which is a final appealable order. *Burnham v. Cleveland Clinic*, 2016-Ohio-8000, ¶ 2. As such, the trial court's decision to conduct an in camera review of those documents is immediately reviewable. *See, e.g.*, *Blue Technologies* at ¶ 16 (where the Eighth District held that it had jurisdiction to review the entry ordering an in camera inspection because the trial court had ordered the disclosure of documents claimed to be confidential or privileged, and that order was final and appealable); *see also Stull v. Summa Health Sys.*, 2024-Ohio-5718 (where, in an appeal from the final order granting a motion to compel the production of presumptively privileged documents, the Supreme Court of Ohio also reviewed the trial court's decision not to conduct an in camera review).

{¶13} Accordingly, we proceed to the merits of the third assignment of error, in which Fifth Third argues that the trial court erred in granting Tall Oaks's motion for in camera review of Fifth Third's purportedly privileged materials.

{¶14} "The decision of whether to hold an in camera review of the materials is within the discretion of the trial court." *Suhay v. Hall*, 2023-Ohio-4869, ¶ 16 (11th Dist.), citing *State ex rel. Nix v. Cleveland*, 83 Ohio St.3d 379, 384 (1998). *See also Daher* at ¶ 12, citing *State ex rel. Grandview Hosp. & Med. Ctr. v. Gorman*, 51 Ohio St.3d 94, 95 (1990) ("In managing the progression of a case, a trial court has inherent authority to use in camera review as a tool to resolve discovery disputes."). Thus, an appellate court will reverse a trial court's decision to hold an in camera review only when it is an abuse of discretion, *see Manley v. Heather Hill, Inc.*, 2007-Ohio-6944, ¶ 38 (11th Dist.), i.e., when the decision is found to be "'unreasonable, arbitrary, or unconscionable,'" *id*. at ¶ 12, quoting *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46, 47 (1997).

{¶15} "The underlying rationale for holding an in camera inspection 'serves two functions: "First, it allows the trial court to make an informed decision as to the evidentiary nature of the material in question rather than depending on the representations of counsel. Secondly, the in-camera inspection allows the trial court to discern that aspect of the evidence, which has evidentiary value from that which does not, as well as to allow the trial court to restrict the availability of that evidence, which has limited evidentiary value."'" *Manley* at ¶ 37, quoting *Sweet v. Sweet*, 2005-Ohio-7060, ¶ 13 (11th Dist.), quoting *Patterson v. Zdanski,* 2003-Ohio-5464, ¶ 18 (7th Dist.).

{¶16} "[A] court may conduct an in camera review of the purportedly privileged communications without destroying the privileged nature of the communications." *Suhay* at ¶ 16, citing *United States v. Zolin*, 491 U.S. 554, 569 (1989). "'[A] lesser evidentiary showing is needed to trigger in camera review than is required ultimately to overcome the privilege.'" *Id*., quoting *Zolin* at 572. This showing requires "a factual basis adequate to support a good faith belief by a reasonable person," *Zolin* at 572, that in camera review

of the materials may reveal evidence to establish the movant's claim that either the materials are not privileged or that an exception to the privilege applies.  *See Suhay* at ¶ 16, citing *Zolin* at 572.

{¶17}  We disagree with Fifth Third's contention that Tall Oaks did not adequately demonstrate a factual basis to support its request for an in camera review.  Tall Oaks argued in its motion that Fifth Third waited nearly "a full calendar year" before providing a privilege log to Tall Oaks, that this privilege log is "intentionally opaque" in contravention of Civ.R. 26(B)(8)(a), which requires a "description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim," and that Fifth Third has asserted "privilege" over internal emails exchanged between various non-lawyer employees of Fifth Third that appear to discuss and summarize what happened to Tall Oaks's account and that are not genuinely protected by the attorney-client privilege or work-product doctrine.  The trial court granted Tall Oaks's motion in order to independently evaluate each document withheld by Fifth Third before issuing a discovery order.  Indeed, Fifth Third concedes in its appellate brief that although it opposed Tall Oaks's request for in camera review, it also requested the trial court to conduct an in camera review prior to ordering the disclosure of putatively privileged material.  We discern no abuse of discretion in this instance.

{¶18}  The third assignment of error is without merit.

{¶19}  In its first and second assignments of error, Fifth Third argues that the trial court erred by requiring it to disclose the substance of 203 documents because they are protected by the attorney-client privilege or by the work-product doctrine, for which Tall Oaks did not make a showing of good cause.  According to Fifth Third, this appeal concerns three categories of documents, nearly all of which were generated after Tall

Case No. 2025-L-003

Oaks made a litigation threat on December 5, 2022: (1) communications exchanged with in-house and outside counsel, all of which were made for the primary purpose of seeking legal advice in response to the litigation threat; (2) internal communications among Fifth Third employees discussing the legal advice sought and received from counsel and/or investigating facts necessary to procure legal advice and obtain legal services; and (3) work-product prepared by non-attorney Fifth Third employees, at counsel's direction, for the purpose of seeking legal advice.

{¶20} Tall Oaks responds that the trial court properly compelled the disclosure of these documents, given that many of them involved (1) communication prior to any threat of litigation, (2) communication that did not involve counsel, and (3) other documents related to Fifth Third's investigation into the facts of what occurred to Tall Oaks's account.

{¶21} Initially, to assuage Fifth Third's concerns raised in its merit brief, we confirm that the trial court's January 7, 2025 order is final and appealable. First, an order compelling the disclosure of materials alleged to be protected by the attorney-client privilege is a final appealable order under R.C. 2505.02(B)(4). *Burnham*, 2016-Ohio-8000, at ¶ 2, citing R.C. 2505.02(B)(4) (an order is final if it "grants or denies a provisional remedy," "prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy," and "the appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment"); *see also* R.C. 2505.02(A)(3) (a proceeding for discovery of privileged matter is a "provisional remedy"). Second, an order compelling the disclosure of materials alleged to be protected by the work-product doctrine may be a final appealable order if the provisional-remedy requirements for appealability under R.C. 2505.02(B)(4) are satisfied. *See Smith v. Chen*, 2015-Ohio-1480, ¶ 2-3, 5-6. Fifth Third has made a colorable claim that the order compels the

Case No. 2025-L-003

disclosure of attorney work product and that any harm from its disclosure cannot be remedied on appeal from a final judgment, and the order determines the work-product dispute and prevents a judgment in Fifth Third's favor in that regard, thereby satisfying R.C. 2505.02(B)(4). *See Glenn*, 2021-Ohio-3369, at ¶ 20-22. Finally, we note that Tall Oaks does not dispute the appealability of the January 7, 2025 order.

{¶22} We also reject Tall Oaks's argument that Fifth Third waived its right to assert the attorney-client privilege and work-product doctrine by intentionally refusing to provide Tall Oaks with a privilege log for more than a year after Tall Oaks served its discovery requests. Given the trial court's order that 40 of the documents were protected from disclosure, the court clearly did not find that Fifth Third had waived its claim of privilege. Whether a party has waived a claim of privilege is a matter within the trial court's discretion. *See Hartzell v. Breneman*, 2011-Ohio-2472, ¶ 23 (7th Dist.), citing *Huntington Natl. Bank v. Dixon*, 2010-Ohio-4668, ¶ 22-25 (8th Dist.). We discern no abuse of discretion with the court's decision.

{¶23} In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Civ.R. 26(B)(1). Thus, the burden of showing that materials should be excluded from disclosure rests upon the party seeking to exclude it. *Waldmann v. Waldmann*, 48 Ohio St.2d 176, 178 (1976); *Stegman v. Nickels*, 2006-Ohio-4918, ¶ 14 (6th Dist.), citing *Peyko v. Frederick*, 25 Ohio St.3d 164, 166 (1986). Here, Fifth Third categorized its privilege-type assertions in its privilege log as (1) solely "attorney-client," (2) solely "work product," or (3) combined "attorney-client; work product."

{¶24} "In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law."

Case No. 2025-L-003

*State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 2005-Ohio-1508, ¶ 18. The common-law privilege, which applies here, "'protects against any dissemination of information obtained in the confidential relationship.'" *Id.* at ¶ 26, quoting *Am. Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 348 (1991). Whether discovery is protected by the attorney-client privilege is a question of law reviewed de novo. *Torres Friedenberg v. Friedenberg*, 2020-Ohio-3345, ¶ 22, citing *Ward v. Summa Health Sys.*, 2010-Ohio-6275, ¶ 13. "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." *Peer v. Sayers*, 2011-Ohio-5439, ¶ 27 (11th Dist.).

{¶25} "Under the attorney-client privilege, '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.'" *Leslie*, 2005-Ohio-1508, at ¶ 21, quoting *Reed v. Baxter*, 134 F.3d 351, 355-356 (6th Cir. 1998). "'In order for a document to constitute a privileged communication, it is essential that it be brought into being primarily as a communication to the attorney.'" *Smith v. Technology House, Ltd*., 2019-Ohio-2670, ¶ 24 (11th Dist.), quoting *In re Klemann*, 132 Ohio St. 187, 192 (1936). Thus, "[d]ocuments and records whose existence preceded a factual investigation or were created independent of such investigation, i.e., independent of any communication between attorney and client, would not be protected by the attorney-client privilege." *Id*.

{¶26} "The protection afforded by the attorney-client privilege extends to 'not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *Jacobs v.*

Case No. 2025-L-003

*Equity Trust Co.*, 2020-Ohio-6882, ¶ 8 (9th Dist.), quoting *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). In the case of a corporate client, Ohio courts generally hold that the privilege extends to communications between employees of the corporate client and legal counsel. *Smith* at ¶ 26, citing *Leslie* at ¶ 22. Application of the privilege in the corporate context must be determined on a case-by-case basis. *Id*., citing *MA Equip. Leasing I, L.L.C. v. Tilton*, 2012-Ohio-4668, ¶ 24 (10th Dist.), citing *Upjohn Co.* at 396.

{¶27} The work-product doctrine, on the other hand, "provides a *qualified* privilege protecting the attorney's mental processes in preparation of litigation . . . ." (Emphasis sic.) *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 2010-Ohio-4469, ¶ 55. "The work product doctrine precludes discovery of the mental impressions, conclusions, opinions, strategies, and legal theories, both tangible and intangible, generated or commissioned by counsel in anticipation of litigation or preparation for trial." *Haile v. Detmer Sons Inc.*, 2022-Ohio-2891, ¶ 12 (2d Dist.), citing *Squire, Sanders & Dempsey* at ¶ 56-60. "[A] party may obtain discovery of documents . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor." Civ.R. 26(B)(4). "In Ohio, protection for an attorney's work product is codified in Civ.R. 26, which notably recognizes work product as separate from privileged matters." *Burnham*, 2016-Ohio-8000, at ¶ 18; *see* Civ.R. 26(B)(8) (differentiating between privilege and protection of trial-preparation materials). Consequently, whether discovery is protected by the work-product doctrine is a decision we review under the abuse of discretion standard. *Haile* at ¶ 12. "'"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable.'" *Id*.,

quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶28} Fifth Third generally argues that the trial court erred by ordering the disclosure of 203 documents that were communications either (a) "exchanged with counsel for the purpose of seeking legal advice in response to Tall Oaks's threat of litigation" or (b) "between non-attorney employees for the purpose of obtaining or relaying legal advice. However, Fifth Third cannot satisfy its burden on appeal to demonstrate specific trial court errors by making only generic arguments and failing to address the specific documents at issue. *See, e.g., Scott Fetzer Co. v. Am. Home Assurance Co.*, 2022-Ohio-1062, ¶ 27 (8th Dist.) (where the appellant did not identify which documents were allegedly improperly ordered to be disclosed, the appellate court would not make the argument for the appellant), citing *Waldmann*, 48 Ohio St.2d at 178 (it is well settled that the burden of showing that documents sought to be excluded are privileged rests with the party seeking to exclude them). Accordingly, our review is necessarily limited to the arguments in Fifth Third's merit brief that pertain to specific documents the trial court ordered it to disclose.

{¶29} First, Fifth Third specifically contends that it should not have been ordered to disclose four documents—labeled CTRL00000634, 0631, 1139, and 1299—because they are communications exchanged with counsel for the purpose of seeking legal advice. These documents are emails sent from Patrick Sucher, Senior Bancorp Resolution Manager in the Office of the President at Fifth Third, directly to other employees in the Office of the President and the Financial Crimes Department; Mr. Sucher also copied multiple attorneys from the bank's Legal Department on the emails. CTRL00001139 and 1299 are copies of the same email that was sent on December 6, 2022; CTRL00000631

Case No. 2025-L-003

was sent on December 8, 2022; and CTRL00000634 was sent on December 13, 2022. Each email contains business coordination language—e.g., "REGROUP to determine how to proceed"; "REGROUP AFTER TODAY'S MEETING"; "in case you are free"—and includes another communication that had been sent on December 5, 2022, to Mr. Sucher from a member of the bank's Payments Team, containing a list of the fraudulent payments made from Tall Oaks's account and a list of the money that had been returned thus far. These four documents fail essential attorney-client privilege requirements: (1) wide distribution defeats confidentiality; (2) business coordination purpose; (3) mixed audience of business and legal personnel; and (4) factual information sharing rather than legal consultation. The inclusion of attorneys among numerous business personnel does not transform these business communications into privileged legal consultations. *See Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 660-661 (1994) ("the mere relation of attorney and client does not raise a presumption of confidentiality of all communications made between them"). The trial court did not err by ordering the disclosure of these documents.

{¶30} Next, Fifth Third specifically contends that two documents—labeled CTRL00004119 and 4129—should have been ordered withheld under the work-product doctrine because the communications occurred during the period that Fifth Third's in-house attorneys, in anticipation of litigation, were investigating Tall Oaks's allegations and directing Fifth Third employees to gather information in furtherance of that investigation. These documents are emails sent by Mr. Sucher to other employees in the Office of the President. CTRL00004119 was sent on December 5, 2022; CTRL00004129 was sent on December 6, 2022. Both emails discuss factual information pertaining to Tall Oaks's bank account and include a transcript of phone calls made to Fifth Third call agents on

Case No. 2025-L-003

September 28, 2022, the day the fraudulent wire transfers commenced. These emails do not include mental processes or legal discussions and, therefore, do not qualify as protected work product. Fifth Third argues that the trial court's treatment of these documents is inconsistent with its treatment of CTRL00005051, which the court found was privileged. However, CTRL00005051 is a transcript from December 12, 2022, of messages between Mr. Sucher and a colleague that includes a discussion of Fifth Third's legal strategy. The trial court did not abuse its discretion by ordering the disclosure of these documents.

{¶31} Finally, Fifth Third specifically contends that four documents—labeled CTRL00005455, 5443, 5444, and 5537—are protected by the work-product doctrine because they are internal notes taken by Mr. Sucher during telephone calls with one of Tall Oaks's principals. Fifth Third argues that the trial court ordered it to produce these documents without any apparent consideration of Mr. Sucher's unrebutted affidavit testimony that he took notes to share (and did share) them with counsel in anticipation of litigation. Moreover, because Tall Oaks is already privy to the contents of the calls, Fifth Third argues that the real aim of requesting these notes is to reveal Mr. Sucher's mental impressions of Tall Oaks's claims. However, none of these documents contain Mr. Sucher's mental impressions of Tall Oaks's claims. Nor has Fifth Third demonstrated that these documents were prepared by counsel or at counsel's request. CTRL00005455, 5443, and 5444 are a list of phone calls and transcripts of some of those calls that were made to Fifth Third call agents and other employees on September 28 and 30, 2022. CTRL00005537 are notes taken by Mr. Sucher of a phone call he had with Tall Oaks's principals on December 13, 2022, merely outlining the conversation that was had. Documents prepared in the ordinary course of business are not protected work product,

*Dawson v. Ohio Gratings, Inc.*, 2021-Ohio-2028, ¶ 14 (5th Dist.), and "[o]therwise discoverable information does not become privileged through the act of turning over the information to one's attorney." *Harpster v. Advanced Elastomer Systems, L.P.*, 2005-Ohio-6919, ¶ 14 (9th Dist.), citing *In re Keough*, 151 Ohio St. 307 (1949), paragraph three of the syllabus. The trial court did not abuse its discretion by ordering the disclosure of these documents.

{¶32} We find no merit with Fifth Third's arguments under its first and second assignments of error.

{¶33} The judgments of the Lake County Court of Common Pleas are affirmed.

JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

---

# JUDGMENT ENTRY

---

For the reasons stated in the opinion of this court, the judgments of the Lake County Court of Common Pleas are affirmed.

Costs to be taxed against appellant.

_____
JUDGE MATT LYNCH


_____
JUDGE JOHN J. EKLUND,
concurs


_____
JUDGE EUGENE A. LUCCI,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-L-003